All right, our eighth case for this morning is United States v. Anthony Williams. Mr. Mullins. May it please the court, my name is Brian Mullins and I represent Anthony Williams, the appellant in this case. Mr. Williams debriefed with the government for a lengthy period and he provided information regarding his accomplice in this bank robbery that he was charged with and ultimately pled guilty to. He also provided information about an unrelated homicide that had occurred in Milwaukee and that he had significant information about. The government ultimately filed a motion for a downward departure under section 5k 1.1 of the sentencing guidelines and asked for a 25% reduction in Mr. Williams's guideline range. The government said in its motion for a downward departure that Mr. Williams had been, had fully accepted responsibility for his role in the offense and there was no mention that Mr. Williams was anything but candid in his sentencing. Mr. Williams asked the court to consider, first of all, the government did not ask the court to grant a downward departure based on the information Mr. Williams gave about the homicide. The government did not believe that that information rose to the level of substantial assistance. And that was what the judge thought too. The judge said it was insubstantial and he not only said that he couldn't but he also said if he could, he wouldn't put it into the guideline calculation, although he said he would and he in fact did return to it for 3553A. So the question is why isn't that exactly what he should have done? Had he evaluated it as substantial, we might have had an interesting question about the difference in approach taken by the government and the court, but actually the court thought it was pretty insubstantial as well. Well, our position on that issue is that comments that the court made suggest that the court did not believe it had the discretion to provide Mr. Williams additional consideration for that information. Well, but he covered both bases though. He said he couldn't and if he could, he wouldn't. I'm going to not find it right this minute, but that was in the transcript. That's what he said. And I'm just citing page nine of the sealed excerpt from the transcript, which said that the district court said that I quote, I come to that conclusion because the government's motion is limited to what has been given to the Department of Justice. The language the district court used suggests that it did not consider that it had the discretion to give Mr. Williams additional consideration. It's at the bottom, it's in appendix page 10. I thought I might be able to find it. He says at this stage of today's proceeding, the court cannot evaluate or dash, in fact, even if the court could evaluate, the court will not He's inviting it in 3553A. And as for your other point, which you raised in your brief about whether Mr. Williams was fully forthcoming or not, I guess it depends if you're a glass half full or glass half empty sort of person. You know, maybe he did tell them about the particular offense, but he also gave this story about needing the money to cover debts and then he sends his wife out with $400 to buy a gun and so on. So, so the court felt that he wasn't really being fully honest. Well, and that's where we believe the court relied on a clearly erroneous fact, which is that Mr. Williams never discussed his motives for the offense in the debrief, that the court specifically said Mr. Williams was not fully forthcoming in the debrief. The It's possible the court... Why does it have to be so narrowly confined? Well, I think it's relevant in this situation because that was one of the bases for our requested variance was because Mr. Williams provided information in addition to what he was getting credit for under the downward departure motion. He provided additional information, which we argued was a basis for a variance. The court found that, I think it's fair to say that the court concluded that it wasn't a basis for a variance because Mr. Williams wasn't forthcoming in his debrief and that's what we believe. Well, he kind of weighs it. I mean, everybody leaves the door open that maybe this homicide thing will eventually make a difference. But as I'm He doesn't see enough forthcomingness, to coin a word, and even if the homicide stuff might have been a little bit helpful, it wasn't enough to tip the balance. That's one way to read the district court's comments, but I think the more direct way to read the court's comments is that the court did not believe Mr. Williams was forthcoming in his debrief. That's exactly what the district court said, and there's no evidence for that finding. Mr., I think the district court might have been confused by the debrief with the comments that Mr. Williams gave to the pre-sentence report writer, which is what the government's argument was, was that Mr. Williams wasn't fully forthcoming with the PSR writer, and we believe that the underlying basis for that is incorrect also because So do you think he should have gotten more than 25% off? He gets a pretty big discount for the cooperation. So is your fundamental argument that the court just erred by not giving a big enough reduction? And if so, doesn't that run into standard of review problems with us? Well, our fundamental argument is that the court erred because it relied on a clearly erroneous fact. I think if the court had not made the comment that it did about Mr. Williams not being forthcoming in his debrief and gave the sentence that it imposed, I don't think we'd have an issue. But it's because of the clearly erroneous fact that the district court erred. Well, the only cooperation really was, I guess you say, about the driver, right? Correct. That's what Mr. Williams received the credit for. Okay, so he told who the driver was, and that's cooperation. I think that would have been pretty easy to find out, but maybe not. I had one sort of remote question, and it said somewhere that he shot somebody. Mr. Williams? Yeah. Yes, he did. What happened with that? He was charged in state court with that offense. He was sentenced on that offense before the federal case, actually. I don't know whether that was looked at as any kind of a criminal history or anything, but maybe not. It was not. Well, it counted as criminal history, yes, but it occurred after this offense. Oh, it did? But it did count under his criminal history. You mean that was later on? That wasn't, you said, prior to this offense? Well, the shooting occurred about a week or two after this offense. Yeah, okay. But he was charged in state court before the federal charges, so it did count towards this criminal history category. So that was before sentencing, then? Yes. Okay. And just, well, I will reserve the rest of my time. All right, that's fine. Mr. Alexander? May it please the Court, my name is Keith Alexander, and I represent the United States. At the beginning of the sentencing hearing, the defendant conceded two points. First, the defense said that the 25% reduction suggested by the government was appropriate for the information that he provided about his co-actor in the robbery. And critically, the defense also conceded at the outset that the defendant did not concede the 25% reduction. The defense also said at the hearing that the information Williams provided about this 2010 homicide had not yet risen to the level of substantial assistance. So, again, at the beginning of the hearing, the defense asked the Court to consider that . . . How tall is substantial assistance? What does it mean to rise to the level of substantial assistance? Well, in Section 5K1.1, it says that the information . . . Yeah, my question is about the level metaphor. It's a verbal point. Well, it was the defense that it hadn't risen to the level of substantial assistance. I think we all understood that to mean it wasn't substantial assistance. Yeah, so just say it wasn't. I'll say it wasn't. Close, but not a match, you know, or something like that. And so my point is, when the defense said that, it was conceding that it was not substantial assistance. And so the Court was left at that point of the hearing, which is solely dedicated to the question of the 5K motion at that point in time, with additional information that both parties agreed was not substantial assistance. And so the Court appropriately, at the request of the defense, considered it later, under 3553. So the Court did exactly, I would say, what the defense asked it to do, and committed no procedural error here. Then we get to this other argument about . . . because there's a point in the transfer. I don't know if you were the prosecutor, but there's a point at which there's about a paragraph of, here are ways in which he wasn't particularly forthcoming. You know, he said he was doing it for the money, and there's the $400, or a couple of other things in this list. Yes, and I was a prosecutor, so I was at the sentencing hearing. So it was your list. Yeah, it was my list. And so what happened was that the Court said that, well, it doesn't appear he was forthcoming in the debrief. The defense counsel, Mr. Mullen, said, wait a second, that's . . . I'm not sure where that's coming from. The Court then turned to me, and then I cited what he had said to the PSR writer and to the Court at the hearing at that point, saying it's inconsistent with other undisputed facts that are on the record. So you were taking a more global view of it, basically, not just the moment when he's sitting down talking about the robbery. That's correct, yes. And the Court then said, I cannot conclude, quote, he said, I cannot conclude he was thoroughly forthcoming in the debrief, but regardless, and then essentially said he's not being forthcoming now to the pre-sentence writer or to the Court now, because he said he robbed the bank because he was in difficult financial straits, but he's buying a gun four days later with $400 of those proceeds. And so there's two points of that. One is he said regardless, so his finding about what happened in the debrief, he didn't rely upon. And secondly, quite frankly, I think it's more egregious that he's not being forthcoming to the Court at sentencing than he is when he's first talking to law enforcement. The only reason why this is a pertinent issue is because it goes to his character under 3553. And so if he's not being forthcoming to the Court at the time of sentencing, that strikes against his character. And so that's what happened there. There's no obstruction enhancement or anything though, right? It's just 3553. It's just 3553. There was no obstruction enhancement. That is correct. And so with that record, the Court didn't clearly err here, didn't err at all. But certainly didn't rely upon its conclusion about what happened or didn't happen, I should say, at the debrief. And so given this record, I would submit to the Court that it should affirm the District Court's sentence here. All right. Thank you very much. Anything further, Mr. Mullins? Yes, Your Honor. Mr. Williams made an innocuous comment to the pre-sentence report writer that he robbed the bank because he needed money. I don't think that's unusual. And the government and the District Court interpreted that comment that he was not truthful about his motives. He gained $8,000, over $8,000 from this bank robbery. He used $400 of that to buy a gun. So I don't think that by itself, which is all the government has and all the District Court has to rely on, shows that he was untruthful to the PSR writer in addition to the debrief. But of course, he doesn't pay much of a price for it either. That's why I asked about obstruction. There's no sentencing guidelines adjustment based on this back and forth about motive. There was never any discussion of that before the sentencing hearing. Right. So in other words, if it's innocuous on one side, it seems to me it's a little bit innocuous on the other side too. Not much comes of it. Other than that, the District Court did not consider the variance. And I think... Didn't give a bigger 5K reduction is what you mean, right? Well, didn't consider an additional variance under 3553. Because we were asking for an additional variance under 3553 for three reasons. One was the timing of the prosecution. One was Mr. Williams' mental health. And one was the additional information that he had given regarding the murder. And I think it's more than semantics that the court said debrief versus PSR. Because that was really the whole thrust of our argument was that he gave significant information in his debrief. And I think giving information in a debrief is relevant to a defendant's likelihood to recidivate. Because it shows that they are giving up accomplices and acquaintances. And it's relevant to a defendant's nature and characteristics. So I think it is more than a semantic issue here. Alright. Well, thank you very much. You were appointed, were you not, Mr. Mullins? Yes. We appreciate your efforts for the court and for your client. Thank you. And thanks as well to the government. We will take the case under advisement.